IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOYCE SAGNA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 1:22-cv-471 (AJT/IDD) |
| ANTONY BLINKEN, | ) |
| *Secretary of State, et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM OPINION**

Defendant Secretary of State Anthony Blinken and the United States of America ("Defendants") seek entry of summary judgment on Counts I and II, claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, on the grounds that Plaintiff failed to timely exhaust her administrative remedies, or alternatively, the Defendants seek dismissal under FRCP 12(b)(6), for failure to state a claim. [Doc. No. 21] (the "Motion"). Defendants also request dismissal, under FRCP 12(b)(1), of Counts III and IV, common law tort claims of tortious interference with employment contract and intentional infliction of emotional distress, for lack of subject matter jurisdiction.

Upon consideration of the Motion, the memoranda submitted in support thereof and in opposition thereto, the arguments presented by counsel at the hearing held on September 28, 2022, the Court **GRANTS** Defendants' Motion for Summary Judgment on Counts I and II for failure to timely exhaust administrative remedies and **GRANTS** Defendant's Motion to Dismiss on Counts III and IV for lack of subject matter jurisdiction.

## I.  BACKGROUND

Plaintiff Joyce Sagna, age 67, brings this lawsuit under the Age Discrimination in Employment Act, and, presumably the Federal Tort Claims Act. Plaintiff began working for the U.S. Department of State in April 2005 as a contractor. [Am. Compl.], ¶ 9. Over the course of her contract, she worked with several State Department employees, including Laurence Wiederwax, John C. Wallace, Shernell Carter, and Michael Pryor. [*Id.*], ¶¶ 3, 13, 16, 26, 31.

The main source of Plaintiff's problems began in or around 2013-2014 after Wiederwax became Acting Division Chief. [*Id.*], ¶ 12-13. From 2014-2016, Plaintiff alleges various slights, including that Wiederwax had an "outburst" after she complained to him about not being copied on office-wide emails or invited to office meetings; her salary was decreased due to a title change in her contract position; and Wallace refused to allow Plaintiff an ergonomic chair. [*Id.*], ¶¶ 13-23. From 2017-2019, Plaintiff alleges that Wallace refused to provide her work appraisals; Pryor told Plaintiff appraisals were "not important;" Carter refused to give credit to Plaintiff for work Plaintiff performed and falsely informed office personnel that Plaintiff's work contained errors; and Wallace relocated Plaintiff to the sixth floor of the building "away from her peers," only relocating her back to the seventh floor after other State Department officials intervened, following which she was forced to work at the "reception desk." [*Id.*], ¶¶ 24-35, 47-50, 52-64, 72. Plaintiff also alleges that around this same period (2018-2020) Pyror and Wallace refused to authorize Plaintiff's travel for work-related purposes while allowing others to travel, and refused to provide her with proper software and equipment. [*Id.*], ¶¶ 37-41, 65-66.

Finally, in January 2021, Plaintiff alleges that she reported the aforementioned harassing, unfair treatment, and hostile work environment caused by Wallace and Carter to the State Department's HR personnel. [*Id.*], ¶ 73. On February 1, 2021, the same day Plaintiff alleges she

promised to provide HR personnel with "supporting documents" for her claims, Wallace called Plaintiff to inform her that the State Department would not be renewing her contract. [*Id.*], ¶¶ 74-75. Plaintiff's contract was not up for renewal until March 3, 2021. [*Id.*], ¶ 77. Immediately following the call from Wallace, Plaintiff received an email letter, directing her to cease and desist all work immediately." [*Id.*], ¶ 76.

Throughout her Amended Complaint, Plaintiff repeatedly includes the general allegation that "younger coworkers" were not treated in a similar fashion. *See, e.g.*, [*id.*], ¶ 15 ("Upon information and belief, Wiederwax never treated any of Plaintiff's younger coworkers in such an aggressive fashion."), ¶ 28 ("No such treatment was ever given to any of Plaintiff's younger coworkers, who were credited for their assignments and not blamed for other's failures."). As an example, Plaintiff alleges, without providing any additional details, that she was "replaced by a much younger hire" after her contract was not renewed. [*Id.*], ¶ 79.

## II. LEGAL PRINCIPLES

a. <u>Summary Judgment</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

    b.  <u>12(b)(1) Standard</u>

Federal courts are courts of limited jurisdiction with specific jurisdictional requirements and limitations, possessing only the jurisdiction authorized them by the United States Constitution and federal statute. *United States* ex rel. *Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *see also United States v. Mitchell*, 683 F. Supp. 2d 427, 428 (E.D. Va. 2010). "Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (citation omitted). Without Article III standing, the Court is left without subject matter jurisdiction. *Id.* at 595-96 ("Standing is an 'irreducible constitutional minimum' that must be satisfied in all cases." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992))). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

Rule 12(b)(1) is the appropriate vehicle to contest subject matter jurisdiction, and when confronted with a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam). A Rule 12(b)(1) motion to dismiss may challenge the existence of subject matter jurisdiction over the case, separate and apart from the facts alleged in the pleadings. *Pro-Football, Inc. v. Blackhorse*, 62 F. Supp. 3d 498, 502 (E.D. Va. 2014) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). Importantly, in this context, the district court "may then go beyond the allegations of the complaint" to determine independently the existence of jurisdiction. *Adams*, 697 F.2d at 1219; *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). If a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *Jadhav*, 555 F.3d at 347.

### III.   ANALYSIS

#### A.   ADEA Claims (Counts I-II)

Plaintiff's ADEA claims are time barred based on her failure to exhaust administrative remedies.

Because administrative exhaustion is non-jurisdictional, Defendants have moved for summary judgment based on Plaintiff's failure to allege facts establishing the required exhaustion of administrative remedies. "Under [the ADEA], it is well-settled that a claimant must exhaust [her] administrative remedies before pursuing a civil action in federal court; moreover, failure to do so will result in the dismissal of his complaint." *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citations omitted). "In general, the failure to consult with an EEO counselor within the required time frame is grounds for dismissing an employee's [ADEA] claim." *Id.* The relevant federal regulations require employees "who believe they have been discriminated against

5

. . . [to] consult a [c]ounselor" designated by their agency to handle equal employment opportunity issues by "initiat[ing] contact with a Counselor within . . . 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

The undisputed facts establish the following: on October 5, 2021, Plaintiff contacted the State Department's Office of Civil Rights ("State OCR"), seeking to commence EEO counseling stemming from discriminatory conduct that occurred on February 1, 2021. [Doc. No. 22], (Defendants' Statement of Undisputed Material Facts ("SUF")), ¶ 1; [Doc. No. 22-1], Ex. A at PageID# 379-80. Accordingly, for Plaintiff's discrete act claims, here age harassment and ADEA retaliation claims, she needed to seek EEO counseling within 45 days of February 1, 2021, *i.e.*, March 18, 2021.[1]

Starting with either Defendants' position that Plaintiff did not contact an EEOC counselor until October 2021 or Plaintiff's contention that she tried to seek EEOC counseling as early as April 16, 2021, Plaintiff's claim is time barred. Plaintiff's ADEA hostile work environment claim is likewise time barred because the last act comprising her claim occurred on February 1, 2021. Plaintiff's post-February 1 allegations, namely that the State Department did not remit her remaining "Leave Pay" or "timely return her personal effects and documents to her," does not trigger the continuing violation doctrine as those complaints are not actionable under a hostile work environment claim. *See Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (affirming dismissal of plaintiff's hostile work environment claim on summary judgment where she could not

---

[1] The fact that the effective date of Defendants' non-renewal of Plaintiff's contract was not until March 3, 2021, does not alter the relevant date for calculating the 45-day period. *See Green v. Brennan*, 578 U.S. 547, 564 (2016) (noting that the Court has previously "explained that an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment" (citing *Delaware St. College v. Ricks*, 449 U.S. 250 (1980) and *Chardon v. Fernandez*, 454 U.S. 6 (1981))). *Doe v. DeJoy*, 2020 WL 6482545, at *7 (E.D. Pa. Nov. 4, 2020) (concluding that plaintiff's 45-day limitations period began to run when he had notice of his termination, not the effective date of the termination). Moreover, Plaintiff concedes that March 18, 2021 is the relevant deadline. *See* [Doc. No. 27], at 8 ("[Plaintiff's] 45-days deadline to contact a counselor with EEOC was March 18, 2021.").

demonstrate that "she was part of the working environment that she alleges was abusive" as she was on unpaid leave when the allegedly abuse remarks were made).

Plaintiff contends that the applicable time deadlines should be extended under the doctrine of equitable tolling.[2] Equitable tolling "has long been considered an *extraordinary remedy* in this circuit, and litigants face a considerable burden to demonstrate that it applies." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015) (emphasis added). Equitable tolling may be applicable where (1) plaintiff was "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or (2) "extraordinary circumstances beyond the plaintiffs' control made it impossible to file the claims on time." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotations omitted).

While Plaintiff argues that she was provided conflicting information about which EEOC office she needed to contact, she comes far short of providing the type of detail the Court requires before tolling the limitations period. For example, while she may have contacted multiple EEOC offices on April 16, 2021—already nearly a month after her 45-day deadline had elapsed—and

---

[2] Although Plaintiff does not explicitly make an argument that her claims should also be extended under 29 C.F.R. § 1614.105(a)(2), the Court interprets her brief as implicitly raising that issue, especially given that Plaintiff's administrative complaint was dismissed on this ground. [Doc. No. 22-1], Ex. D. Under that provision, an agency shall extend the 45-day limit "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them" *Doe v. Brennan*, 980 F. Supp. 2d 730, 736 (E.D. Va. 2013) (quoting 29 C.F.R. § 1614.105(a)(2))). Plaintiff seeks relief based on her contention that she was generally unaware of her March 18, 2021 deadline. Plaintiff's argument that she was unaware of the 45-day deadline is belied by the multiple trainings she received about the proper EEO procedures. [Doc. No. 22-1], Ex. D at PageID# 395-96, 399-401 (noting Plaintiff received numerous trainings about EEO process and that Plaintiff also had constructive notice of the EEO process through posted notices on the Department of State's internet site and intranet site). Plaintiff offers no evidence that she did not receive those trainings or that the posted notices did not adequately advise her of her rights and consequences for failure to follow the EEO process. *See, e.g.*, *Hickey v. Brennan*, 969 F.3d 1113, 1123-24 (10th Cir. 2020) (noting posters informing employees of requirement to contact an EEO counselor withing forty-five days "may suffice to establish constructive notice of EEO time limits, even where an employee maintains that she did not actually notice the posters"); *Harris v. Gonzales*, 488 F.3d 442, 445 (D.C. Cir. 2007) ("[S]ubjective ignorance alone does not automatically entitle [the plaintiff] to the exception in [subsection (a)(2)]." (quoting *Johnson v. Runyon*, 47 F.3d 911 (7th Cir. 1995)) (alterations in original)). For these reasons, Plaintiff is not entitled to extend the applicable deadlines under 29 C.F.R. § 1614.105(a)(2).

received conflicting information, she does not specifically allege, nor provide any evidence for, why she did not file her form for another six months.[3]

Based on her January 2021 complaint, she is essentially contending that she thought she had already commenced the EEO process. In that regard, Plaintiff sent a January 7, 2021 email complaining of harassment by Shernell Carter to two of her other alleged harassers: John Wallace and Michael Pryor. [Doc. No. 27-1], Ex. A. "Although 29 C.F.R. § 1614.105(a) does not define what it means to 'initiate contact' with an EEO counselor so as to make an EEO claim, the 'EEOC has consistently held that a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process.'" *Green v. Garland*, 2022 WL 3211217, at *12 (D.S.C. May 3, 2022) (quoting EEOC Management Directive 110, at ch. 2, § I.A, n.1 (Nov. 9, 1999)). Even assuming that Wallace and/or Pryor were "logically connected with the EEO process," a proposition for which Plaintiff proffers no evidence, the email itself does not exhibit "an intent to begin the EEO process." The email does not reference the "EEO record" or the EEO "process," and as such does not exhibit the required intent. *See, e.g.*, *Welsh v. Hagler*, 83 F. Supp. 3d 212, 220-21 (D.D.C. 2015) (collecting cases). Additionally, Plaintiff does not allege, nor provide any evidence, that she was told that her January 2021 complaint was still under review or that the complaint satisfied her procedural requirements. Therefore, even if April 16, 2021, served as relevant date here, which it does not, Plaintiff would not be entitled to equitable tolling.

---

[3] Plaintiff claims she could not readily contact an EEO counselor because she was caring for her terminally-ill mother, who passed away at the end of March 2021, and was under the impression that her January 2021 harassment complaint was still under consideration. Based on the record before the Court, neither contention would excuse her delay.

8

More importantly, Plaintiff fails to offer any substantive explanation for why she waited another six months after her April 16th contact before successfully initiating contact with an EEO counselor. Plaintiff only vaguely contends, with no supporting evidence, that she was "[s]tuck in [a] miscommunication circle" and that when "she was finally able to receive the proper form to file her charges, she did just that, in October 2021." [Doc. No. 27], at 7-8. She offers no evidence of trickery or subterfuge on behalf of the Defendants. And, as noted above, Plaintiff received several trainings and was otherwise on notice regarding the relevant procedures and deadlines for filing commencing an EEO complaint, thereby undermining her equitable tolling claim. *See, e.g.*, *Campbell v. Burgess*, 2012 WL 203934, at *3 n.3 (W.D.N.C. Aug. 6, 2012) (finding equitable tolling inapplicable where defendant "took measures to inform its employees of the correct procedure for timely filing discrimination complaints," including notice of the 45-day time limit). In sum, Plaintiff does not offer any evidence showing the type of relentless diligence on her behalf or dilatory and/or obstructionist behavior on Defendants' behalf, or any other extraordinary circumstances outside of her control, that would allow the Court to equitably toll her claims and deny Defendants' Motion for Summary Judgment.

### B.  FTCA Claims (Counts III-IV)

The Court lacks subject matter jurisdiction over Plaintiff's tort claims.

In Count III, Plaintiff alleges tortious interference with employment contract and in Count IV, alleges intentional infliction of emotional distress. [Am. Compl.], ¶¶ 113-135. The United States enjoys sovereign immunity from suit unless Congress has explicitly waived it. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity for a number of tortious acts committed by its employees. 28

U.S.C. § 1346(b)(1). The waiver, however, is limited in several respects. For instance, claimants must exhaust their administrative remedies with the appropriate federal agency before bringing suit in federal court. 28 U.S.C. § 2675(a). This requirement is jurisdictional. *See Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994). Plaintiff, offering no rebuttal to Defendants' FTCA arguments, did not present her tort claims to the State Department. Accordingly, her FTCA claims, Counts III-IV, are dismissed for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment on Counts I and II for failure to exhaust administrative remedies is **GRANTED**, it is further

ORDERED that Defendant's Motion to Dismiss on Counts III and IV for lack of subject matter jurisdiction is **GRANTED**; and it is further

ORDERED that this action is **DISMISSED.**

The Clerk is directed to enter Judgment in accordance with Rule 58 on Counts I-IV and forward copies of this Order to all counsel of record.

_____
Anthony J. Trenga
Senior U.S. District Judge

November 7, 2022
Alexandria, Virginia